**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| JENNIFER L. SEXTON, | 3:12-cv-00333-HDM-VPC |
| Plaintiff, | |
| | ORDER |
| vs. | |
| PEGGY DUPEY, MELISSA PIASECKI, THOMAS SCHWENK, HEATHER HARDY, MARC JOHNSON, and NEVADA SYSTEM OF HIGHER EDUCATION, | |
| Defendants. | |

Plaintiff Jennifer Sexton ("plaintiff") has filed a complaint against defendants Peggy Dupey, Melissa Piasecki, Thomas Schwenk, Heather Hardy, Marc Johnson, and Nevada System of Higher Education (collectively "defendants") asserting three causes of action: (1) First Amendment retaliation; (2) constructive or tortious discharge; and (3) breach of contract.  Presently before the court is the defendants' motion for summary judgment (#25).  Plaintiff has opposed (#28), and defendants have replied (#29).

From January 2007 to April 2012, plaintiff was employed as an IT Analyst by the University of Nevada School of Medicine in the department of Admissions and Student Affairs.  (Def. Mot. Summ. J.

1

Ex. 1A (Pl. Dep. 6); Pl. Opp'n (Pl. Decl. 3)).[1]  On April 17, 2012, plaintiff received notice that her position had been eliminated, that her employment would be terminated in one year, and that she was reassigned to Human Resources and Marketing until that time. (Pl. Decl. 3; Def. Mot. Ex. 1C (Bates No. 2-3)).  Rather than accepting the reassignment, plaintiff resigned her employment on April 19, 2012.  (Pl. Decl. 3).

On April 30, 2012, plaintiff filed a complaint in state court. Defendants removed to this court on June 19, 2012, and filed their motion for summary judgment on March 19, 2013.

**Standard**

"The court shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The burden of demonstrating the absence of a genuine issue of material fact lies with the moving party, and for this purpose, the material lodged by the moving party must be viewed in the light most favorable to the nonmoving party.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Martinez v. City of Los Angeles*, 141 F.3d 1373, 1378 (9th Cir. 1998).  A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the differing versions of the truth.  *Lynn v. Sheet Metal Workers Int'l Ass'n,* 804 F.2d 1472, 1483 (9th Cir. 1986); *S.E.C. v. Seaboard Corp.*, 677 F.2d 1301, 1306 (9th Cir. 1982).

---

[1] Plaintiff's deposition, contained in exhibits 1A through 1C of defendant's motion, is hereinafter cited in short form as Pl. Dep. Plaintiff's declaration, attached to plaintiff's opposition, is hereinafter cited in short form as Pl. Decl.

Once the moving party presents evidence that would call for judgment as a matter of law at trial if left uncontroverted, the respondent must show by specific facts the existence of a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (citations omitted). "A mere scintilla of evidence will not do, for a jury is permitted to draw only those inferences of which the evidence is reasonably susceptible; it may not resort to speculation." *British Airways Bd. v. Boeing Co.,* 585 F.2d 946, 952 (9th Cir. 1978); *see also Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 596 (1993) ("[I]n the event the trial court concludes that the scintilla of evidence presented supporting a position is insufficient to allow a reasonable juror to conclude that the position more likely than not is true, the court remains free . . . to grant summary judgment.").

Finally, conclusory allegations that are unsupported by factual data cannot defeat a motion for summary judgment. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). If the nonmoving party fails to present an adequate opposition to a summary judgment motion, the court need not search the entire record for evidence that demonstrates the existence of a genuine issue of fact. *See Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1029-31 (9th Cir. 2001) (holding that "the district court may determine whether there is a genuine issue of fact, on summary judgment, based on the papers submitted on the motion and such other papers

3

as may be on file and specifically referred to and facts therein set forth in the motion papers"). The district court need not "scour the record in search of a genuine issue of triable fact," but rather must "rely on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (quoting *Richards v. Combined Ins. Co.*, 55 F.3d 247, 251 (7th Cir.1995)).

**Analysis**

I. First Amendment Retaliation

Plaintiff's first claim for relief, brought pursuant to 42 U.S.C. § 1983, asserts First Amendment retaliation against the individual defendants.

To prove a violation under 42 U.S.C. § 1983, a plaintiff must establish that the defendants (1) acting under color of law (2) deprived plaintiff of the rights, privileges, or immunities secured by the Constitution or the laws of the United States. *Gibson v. United States*, 781 F.2d 1334, 1338 (9th Cir. 1986). There is no dispute that the defendants were acting under color of law. The issue is thus whether defendants deprived plaintiff of her First Amendment rights.

"It is well settled that the state may not abuse its position as employer to stifle 'the First Amendment rights its employees would otherwise enjoy as citizens to comment on matters of public interest.'" *Eng v. Cooley*, 552 F.3d 1062, 1070 (9th Cir. 2009). First Amendment retaliation claims are analyzed through a sequential five-step test: (1) whether the plaintiff spoke on a matter of public concern; (2) whether the plaintiff spoke as a

private citizen or public employee; (3) whether the plaintiff's protected speech was a substantial or motivating factor in the adverse employment action; (4) whether the state had an adequate justification for treating the employee differently from other members of the general public; and (5) whether the state would have taken the adverse employment action even absent the protected speech. *Id.* at 1070. Thus, to prove a First Amendment claim, the plaintiff must first establish that she spoke on a matter of public concern.

Plaintiff bears the burden of showing her speech was a matter of public concern. *Eng*, 552 F.3d at 1070. "Speech involves a matter of public concern when it can fairly be considered to relate to 'any matter of political, social, or other concern to the community.'" This inquiry is a question of law and is based on the "content, form, and context of a given statement, as revealed by the record as a whole." *Id.* "Of these, content is the most important factor." *Anthoine v. N. Cent. Counties Consortium*, 605 F.3d 740, 748 (9th Cir. 2010).

While the scope of the public concern element has been defined broadly, *Desrochers v. City of San Bernardino*, 572 F.3d 703, 710 (9th Cir. 2009), "a simple reference to government functioning does not automatically qualify as speech on a matter of public concern." *Brownfield v. City of Yakima*, 612 F.3d 1140, 1148 (9th Cir. 2010) (internal punctuation omitted). "[T]he content of the communication must be of broader societal concern. The focus must be upon whether the public or community is likely to be truly interested in the particular expression, or whether it is more properly viewed as essentially a private grievance." *Id.* (internal

citations omitted).  "[I]ndividual personnel disputes and grievances" that are "of no relevance to the public's evaluation of the performance of governmental agencies" are not usually of public concern.  *Eng*, 552 F.3d at 1070; *see also Ellins v. City of Sierra Madre*, 710 F.3d 1049, 1057 (9th Cir. 2013) (First Amendment not implicated where speech resulted from an individual – as opposed to a collective – personnel grievance).  "In a close case, when the subject matter of a statement is only marginally related to issues of public concern, the fact that it was made because of a grudge or other private interest or to coworkers rather than to the press may lead the court to conclude that the statement does not substantially involve a matter of public concern."  *Desrochers*, 572 F.3d at 710.  "Although not dispositive, a small or limited audience weighs against a claim of protected speech."  *Clairmont v. Sound Mental Health*, 632 F.3d 1091, 1104 (9th Cir. 2011) (quoting *Desrochers*, 572 F.3d at 714) (internal punctuation omitted).

Plaintiff identifies four instances of allegedly protected speech.

First, in the fall of 2010, Dupey asked plaintiff to serve on an employee search committee.  According to plaintiff, Dupey said that she wanted to assure her favored candidate was chosen.  Plaintiff claims that she "refused respectfully, explaining that there was a process whereby the most qualified applicant is chosen," and that Dupey then "withdrew the request." (Pl. Decl. 1; *see also* Pl. Dep. 14 ("I told her that I would be happy to serve on the committee, but there was a process and a metric for the candidates with their given scores, and then the person who has the most scores is offered the position.")).  Plaintiff did not

complain to anyone about this conversation.  (Pl. Dep. 14-15).

Plaintiff argues that this speech was on a matter of public concern because it "addressed potential corruption in the hiring process, the existence of a preferred candidate and an official who did not want 'the wrong candidate' hired."  (Pl. Opp'n 5).

Plaintiff's statement did not directly allege that Dupey was engaging in unethical hiring practices, but viewing the facts in a light most favorable to plaintiff, it did insinuate plaintiff believed Dupey's request to be improper.  While a complaint about the hiring practices of a public entity may be a matter of public concern, for several reasons plaintiff's statement here was not. First, as to content, plaintiff did not directly charge unethical hiring practices as a routine or even repeated matter but instead suggested that Dupey's attempt to control the process in that one instance was improper.  Second, as to form, plaintiff made her statement to only Dupey and to no one else.  Not only was this an internal and private audience of one, but the statement was also made to the person whose conduct plaintiff found objectionable. Plaintiff made no effort to apprise anyone else of what she believed was Dupey's improper request.  Finally, as to context, there is no evidence that at the time of plaintiff's statement Dupey had been engaging in unethical hiring practices such that plaintiff's statement could be understood as an indictment of ongoing and repeated violations.  The court concludes that as a matter of law plaintiff's fall 2010 statement to Dupey was not on a matter of public concern.

Second, plaintiff asserts that she "spoke out against keeping the paper system when the system was fully computerized."  (Pl.

Opp'n 5).  The record reflects that in July 2011, plaintiff asked Dupey why paper copies of applications were being kept for another year after the application system had become fully computerized. (Pl. Dep. 28-30).  After receiving a response, plaintiff sent an email to defendant Dupey and two other admissions personnel, expressing her concern that keeping paper records was "a waste of time, resources, and money."  (Def. Mot. Ex. 1D (Bates number 127-29)).  About a week later, plaintiff claims that Dupey told her "she didn't like the tone of [her] email and thought it was disrespectful."  (Pl. Dep. 31).  Plaintiff did not complain about Dupey's comment to anyone.  (Pl. Dep. 31).

While inefficiency in government can be a matter of public concern, *Johnson v. Multnomah County*, 48 F.3d 420, 425 (9th Cir. 1995), "the content of the communication must be of broader societal concern," *Brownfield*, 612 F.3d at 1148.  Indeed, the cases cited by plaintiff finding a matter of public concern involved substantial charges of waste or corruption.  *See, e.g., Eng*, 552 F.3d at 1072-73 (statement regarding leaked information that led to increased costs in the construction of a public school complex); *Keyser v. Sacramento City Unified Sch. Dist.*, 265 F.3d 741, 745 (9th Cir. 2001) (allegations that charged "administrators with spending federal Title I money to pay for consultants and other personnel in violation of federal guidelines on the use of the money"); *Johnson*, 48 F.3d at 424-25 (allegations included assertions of "potentially criminal behavior"); *Roth v. Veteran's Admin. of Gov't of U.S.*, 856 F.2d 1401, 1405-06 (9th Cir. 1988), *overruled on other grounds by Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006) (allegations that "VA administrators and staff wasted

resources, acted unethically, mismanaged personnel, and violated
safety regulations, thereby putting patients in jeopardy"). 
Plaintiff's statement about the waste of paper and time does not
approach the level of public concern in these cases because the use
of paper for an additional year during the transition from hard to
electronic files is not a matter of broad societal concern.  Not
only that, but the form of plaintiff's communication – an internal
email to three people – weighs against finding she spoke on a
matter of public concern.  Finally, the context of plaintiff's
email, which was a disparagement of the current practice, also
weighs against finding that it was a matter of public concern. 
Accordingly, in light of the context, form, and content of
plaintiff's statement, the court concludes as a matter of law that
plaintiff's concern about the costs associated with using both
paper and electronic files was not a matter of public concern.

  Third, on February 20, 2012, plaintiff emailed defendant
Piasecki complaining that Dupey had created an uncomfortable and
passive aggressive work environment.  (Def. Mot. Ex. 1E (Bates No.
329)).  In the email, plaintiff wrote:

> Peggy has attempted to get rid of my position since she
> took over the department. . . . [T]o my detriment is the
> fact that I refuse to align myself with colleagues
> against others and engage in office politics.  After
> clearly stating to Peggy that I would not align with her
> against others in the department, she severed our bi-
> monthly meetings for eight months, only to reinstate them
> a couple of months ago.  This was prompted by my
> application for a position she had created as a promotion
> for a colleague – in flagrant disregard for NSHE hiring
> policies.  This position is higher in rank than my
> current position and pays an allocated 15K more per year
> than I currently make. . . . It is a very uncomfortable
> and passive aggressive environment.  As you said, it is
> soul crushing.  Not the work, the work environment.

*Id.*

Complaints of an oppressive work environment have been considered matters of public concern when they involve either substantial issues of public concern, such as unlawful conduct or discrimination, or a collective grievance. *See Alpha Energy Savers, Inc. v. Hansen*, 381 F.3d 917, 925 (9th Cir. 2004) (plaintiff spoke on matter of public concern when he testified about race and age discrimination by a governmental employer); *Pool v. VanRheen*, 297 F.3d 899 (9th Cir. 2002) (letter detailing "good ole boy" environment which fostered racial and gender discrimination spoke on matter of public concern); *McKinley v. City of Eloy*, 705 F.2d 1110 (9th Cir. 1983) (police officer's public criticism of city's decision not to give police officers an annual raise protected by the First Amendment); *see also Ellins*, 710 F.3d at 1057. Plaintiff's statement in this case involves neither. In the context of the entire record, her statement was decidedly personal: Plaintiff claimed that Dupey mistreated her because she refused to engage in office politics. There is no allegation that Dupey's conduct was creating a hostile and oppressive environment for anyone but plaintiff. Nor are office politics a matter of public concern. Although plaintiff's complaint that Dupey created a job for a colleague might marginally touch on a matter of public concern, it was still conveyed as a matter of private interest – that is, plaintiff's desire for a promotion. (*See* Def. Mot. Ex. 1E (Bates No. 329) ("This position is higher in rank than my current position and pays an allocated 15K more per year than I currently make."). The fact that plaintiff made this statement internally weighs heavily against a finding that she was speaking on a matter of public concern. Accordingly, the court concludes plaintiff's

third comment did not speak to a matter of public concern.

Finally, plaintiff's complaint asserts that in November 2011, plaintiff applied for a job that had been created for her colleague Kris Nelson.  The complaint asserts that plaintiff's application forced the search to become "legitimate,"[2] and that her filing of the application was protected expressive conduct protesting Dupey's hiring practices.

"Non-verbal conduct implicates the First Amendment when it is intended to convey a 'particularized message' and the likelihood is great that the message would be so understood." *Alpha Energy Savers, Inc. v. Hansen*, 381 F.3d 917, 924 (9th Cir. 2004).  There is no evidence that plaintiff intended her applications to convey a particularized message, nor is there evidence suggesting it was highly likely defendants would have understood it as such.  This is particularly so given plaintiff's ongoing attempts to secure higher paid employment with the university.

In addition, even if the plaintiff's application could be considered expressive conduct, plaintiff cites to no evidence that suggests that what she was protesting was in fact a violation of the university's hiring policies.  Plaintiff makes no effort to substantiate or explain her assertion that Dupey violated hiring policies, including specifically what those policies were or how Dupey supposedly violated them.  Plaintiff's testimony that it was "common knowledge" that Dupey created a position for Nelson and that Nelson frequently talked about her promotion before it

---

[2] Plaintiff's complaint also references applications she filed in June and July 2012 that required searches to become "legitimate."  Plaintiff does not identify either of these applications as protected speech.

occurred (Pl. Dep. 42:8-18) is speculative, conclusory, and constitutes inadmissible hearsay.  It also fails to explain how Dupey's actions violate any specific NSHE policies.

In any event, plaintiff's expressive conduct relates to what is essentially an individual personnel grievance.  Further, it is unclear to whom she allegedly broadcast her statement beyond defendant Dupey.  Taken together, the limited audience and minimally relevant subject matter of plaintiff's statement compel the conclusion that plaintiff was not speaking on a matter of public concern.[3]

Because plaintiff has failed to show that a genuine issue of material fact exists that would establish that plaintiff spoke out on a matter of public concern, the defendant is entitled to summary judgment on plaintiff's First Amendment claim.[4]

II. Tortious Discharge and Breach of Contract

Having dismissed plaintiff's federal claim, the court declines to exercise supplemental jurisdiction over her state law claims.  A district court need not actuate supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction.  28 U.S.C. § 1367(c)(3); *see Moore v. Kayport Package Express, Inc.*,

---

[3] Plaintiff's complaint also states that she "continued to protest to Dupey ongoing searches which were not legitimate."  (Pl. Compl. ¶ 12). However, plaintiff points to no evidence as to when or what she protested. The only specific complaint the court can discern is her complaint to Piasecki that Dupey had created a job for Nelson.  As already discussed, this did not amount to a matter of public concern.  To the extent plaintiff's claim is based on other protests to illegitimate searches, plaintiff has failed to point to a genuine issue of material fact precluding summary judgment on such claim.

[4] As plaintiff has not proven her First Amendment violation, any claim of constructive or tortious discharge in violation of "federal public policy" must also fail.

885 F.2d 531, 537 (9th Cir. 1989).  "[I]n the usual case in which
all federal-law claims are eliminated before trial, the balance of
factors to be considered under the pendent jurisdiction
doctrine—judicial economy, convenience, fairness, and comity—will
point toward declining to exercise jurisdiction over the remaining
state-law claims."  *Carnegie—Mellon University v. Cohill*, 484 U.S.
343, 350 n.7 (1988).  Here, fairness and convenience favor remand
as plaintiff's claims originated in state court, and state court
was plaintiff's chosen venue.  Comity also favors remand, as
plaintiff's tortious discharge claim involves a determination of
Nevada public policy and such determinations are preferably made by
the state courts.  Economy does not seem to be a significant factor
in this case.  Accordingly, the plaintiff's constructive or
tortious discharge and breach of contract claims will be remanded
to the state court for further proceedings.

**Conclusion**

     In accordance with the foregoing, the defendants' motion for
summary judgment is **GRANTED IN PART** and **DENIED IN PART**.  The motion
is granted as to plaintiff's First Amendment claim.  The court
declines to consider plaintiff's state law claims and hereby
remands said claims to the Second Judicial District Court of the
State of Nevada in and for the County of Washoe.  The clerk of the
court shall enter judgment accordingly.

     IT IS SO ORDERED.

     DATED: This 25th day of July, 2013.

                         Howard D McKibben

                         _____
                         UNITED STATES DISTRICT JUDGE