1

2

3

4

5

6

7

8                    **UNITED STATES DISTRICT COURT**

9                          **DISTRICT OF NEVADA**

10

11  JENNIFER L. SEXTON,                )        3:12-cv-00333-HDM-VPC
                                       )
12               Plaintiff,            )
                                       )        ORDER
13  vs.                                )
                                       )
14  PEGGY DUPEY, MELISSA PIASECKI,     )
    THOMAS SCHWENK, HEATHER HARDY,     )
15  MARC JOHNSON, and NEVADA SYSTEM    )
    OF HIGHER EDUCATION,               )
16                                     )
                 Defendants.           )
17  _____  )

18       Plaintiff Jennifer Sexton ("plaintiff") has filed a complaint

19  against defendants Peggy Dupey, Melissa Piasecki, Thomas Schwenk,

20  Heather Hardy, Marc Johnson, and Nevada System of Higher Education

21  (collectively "defendants") asserting three causes of action: (1)

22  First Amendment retaliation; (2) constructive or tortious

23  discharge; and (3) breach of contract.  Presently before the court

24  is the defendants' motion for summary judgment (#25).  Plaintiff

25  has opposed (#28), and defendants have replied (#29).

26       From January 2007 to April 2012, plaintiff was employed as an

27  IT Analyst by the University of Nevada School of Medicine in the

28  department of Admissions and Student Affairs.  (Def. Mot. Summ. J.

                                   1

1  Ex. 1A (Pl. Dep. 6); Pl. Opp'n (Pl. Decl. 3)).[1]  On April 17, 2012,

2  plaintiff received notice that her position had been eliminated,

3  that her employment would be terminated in one year, and that she

4  was reassigned to Human Resources and Marketing until that time.

5  (Pl. Decl. 3; Def. Mot. Ex. 1C (Bates No. 2-3)).  Rather than

6  accepting the reassignment, plaintiff resigned her employment on

7  April 19, 2012.  (Pl. Decl. 3).

8      On April 30, 2012, plaintiff filed a complaint in state court.

9  Defendants removed to this court on June 19, 2012, and filed their

10  motion for summary judgment on March 19, 2013.

11  **Standard**

12      "The court shall grant summary judgment if the movant shows

13  that there is no genuine issue as to any material fact and the

14  movant is entitled to judgment as a matter of law."  Fed. R. Civ.

15  P. 56(a).  The burden of demonstrating the absence of a genuine

16  issue of material fact lies with the moving party, and for this

17  purpose, the material lodged by the moving party must be viewed in

18  the light most favorable to the nonmoving party.  *Adickes v. S.H.*

19  *Kress & Co.*, 398 U.S. 144, 157 (1970); *Martinez v. City of Los*

20  *Angeles*, 141 F.3d 1373, 1378 (9th Cir. 1998).  A material issue of

21  fact is one that affects the outcome of the litigation and requires

22  a trial to resolve the differing versions of the truth.  *Lynn v.*

23  *Sheet Metal Workers Int'l Ass'n,* 804 F.2d 1472, 1483 (9th Cir.

24  1986); *S.E.C. v. Seaboard Corp.*, 677 F.2d 1301, 1306 (9th Cir.

25  1982).

26

27     [1] Plaintiff's deposition, contained in exhibits 1A through 1C of defendant's motion, is hereinafter cited in short form as Pl. Dep.

28  Plaintiff's declaration, attached to plaintiff's opposition, is hereinafter cited in short form as Pl. Decl.

1  Once the moving party presents evidence that would call for

2 judgment as a matter of law at trial if left uncontroverted, the

3 respondent must show by specific facts the existence of a genuine

4 issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

5 250 (1986). "[T]here is no issue for trial unless there is

6 sufficient evidence favoring the nonmoving party for a jury to

7 return a verdict for that party. If the evidence is merely

8 colorable, or is not significantly probative, summary judgment may

9 be granted." *Id.* at 249-50 (citations omitted). "A mere scintilla

10 of evidence will not do, for a jury is permitted to draw only those

11 inferences of which the evidence is reasonably susceptible; it may

12 not resort to speculation." *British Airways Bd. v. Boeing Co.,* 585

13 F.2d 946, 952 (9th Cir. 1978); *see also Daubert v. Merrell Dow*

14 *Pharmaceuticals, Inc.*, 509 U.S. 579, 596 (1993) ("[I]n the event

15 the trial court concludes that the scintilla of evidence presented

16 supporting a position is insufficient to allow a reasonable juror

17 to conclude that the position more likely than not is true, the

18 court remains free . . . to grant summary judgment.").

19  Finally, conclusory allegations that are unsupported by

20 factual data cannot defeat a motion for summary judgment. *Taylor*

21 *v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). If the nonmoving

22 party fails to present an adequate opposition to a summary judgment

23 motion, the court need not search the entire record for evidence

24 that demonstrates the existence of a genuine issue of fact. *See*

25 *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1029-31

26 (9th Cir. 2001) (holding that "the district court may determine

27 whether there is a genuine issue of fact, on summary judgment,

28 based on the papers submitted on the motion and such other papers

3

1 as may be on file and specifically referred to and facts therein

2 set forth in the motion papers").  The district court need not

3 "scour the record in search of a genuine issue of triable fact,"

4 but rather must "rely on the nonmoving party to identify with

5 reasonable particularity the evidence that precludes summary

6 judgment."  *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996)

7 (quoting *Richards v. Combined Ins. Co.*, 55 F.3d 247, 251 (7th

8 Cir.1995)).

9 **Analysis**

10 I. First Amendment Retaliation

11      Plaintiff's first claim for relief, brought pursuant to 42

12 U.S.C. § 1983, asserts First Amendment retaliation against the

13 individual defendants.

14      To prove a violation under 42 U.S.C. § 1983, a plaintiff must

15 establish that the defendants (1) acting under color of law (2)

16 deprived plaintiff of the rights, privileges, or immunities secured

17 by the Constitution or the laws of the United States.  *Gibson v.*

18 *United States*, 781 F.2d 1334, 1338 (9th Cir. 1986).  There is no

19 dispute that the defendants were acting under color of law.  The

20 issue is thus whether defendants deprived plaintiff of her First

21 Amendment rights.

22      "It is well settled that the state may not abuse its position

23 as employer to stifle 'the First Amendment rights its employees

24 would otherwise enjoy as citizens to comment on matters of public

25 interest.'"  *Eng v. Cooley*, 552 F.3d 1062, 1070 (9th Cir. 2009).

26 First Amendment retaliation claims are analyzed through a

27 sequential five-step test: (1) whether the plaintiff spoke on a

28 matter of public concern; (2) whether the plaintiff spoke as a

4

1  private citizen or public employee; (3) whether the plaintiff's

2  protected speech was a substantial or motivating factor in the

3  adverse employment action; (4) whether the state had an adequate

4  justification for treating the employee differently from other

5  members of the general public; and (5) whether the state would have

6  taken the adverse employment action even absent the protected

7  speech. *Id.* at 1070.  Thus, to prove a First Amendment claim, the

8  plaintiff must first establish that she spoke on a matter of public

9  concern.

10      Plaintiff bears the burden of showing her speech was a matter

11  of public concern. *Eng*, 552 F.3d at 1070.  "Speech involves a

12  matter of public concern when it can fairly be considered to relate

13  to 'any matter of political, social, or other concern to the

14  community.'"  This inquiry is a question of law and is based on the

15  "content, form, and context of a given statement, as revealed by

16  the record as a whole."  *Id.*  "Of these, content is the most

17  important factor."  *Anthoine v. N. Cent. Counties Consortium*, 605

18  F.3d 740, 748 (9th Cir. 2010).

19      While the scope of the public concern element has been defined

20  broadly, *Desrochers v. City of San Bernardino*, 572 F.3d 703, 710

21  (9th Cir. 2009), "a simple reference to government functioning does

22  not automatically qualify as speech on a matter of public concern."

23  *Brownfield v. City of Yakima*, 612 F.3d 1140, 1148 (9th Cir. 2010)

24  (internal punctuation omitted).  "[T]he content of the

25  communication must be of broader societal concern.  The focus must

26  be upon whether the public or community is likely to be truly

27  interested in the particular expression, or whether it is more

28  properly viewed as essentially a private grievance."  *Id.* (internal

1   citations omitted).  "[I]ndividual personnel disputes and

2   grievances" that are "of no relevance to the public's evaluation of

3   the performance of governmental agencies" are not usually of public

4   concern.  *Eng*, 552 F.3d at 1070; *see also Ellins v. City of Sierra*

5   *Madre*, 710 F.3d 1049, 1057 (9th Cir. 2013) (First Amendment not

6   implicated where speech resulted from an individual – as opposed to

7   a collective – personnel grievance).  "In a close case, when the

8   subject matter of a statement is only marginally related to issues

9   of public concern, the fact that it was made because of a grudge or

10  other private interest or to coworkers rather than to the press may

11  lead the court to conclude that the statement does not

12  substantially involve a matter of public concern."  *Desrochers*, 572

13  F.3d at 710.  "Although not dispositive, a small or limited

14  audience weighs against a claim of protected speech."  *Clairmont v.*

15  *Sound Mental Health*, 632 F.3d 1091, 1104 (9th Cir. 2011) (quoting

16  *Desrochers*, 572 F.3d at 714) (internal punctuation omitted).

17       Plaintiff identifies four instances of allegedly protected

18  speech.

19       First, in the fall of 2010, Dupey asked plaintiff to serve on

20  an employee search committee.  According to plaintiff, Dupey said

21  that she wanted to assure her favored candidate was chosen.

22  Plaintiff claims that she "refused respectfully, explaining that

23  there was a process whereby the most qualified applicant is

24  chosen," and that Dupey then "withdrew the request."  (Pl. Decl. 1;

25  *see also* Pl. Dep. 14 ("I told her that I would be happy to serve on

26  the committee, but there was a process and a metric for the

27  candidates with their given scores, and then the person who has the

28  most scores is offered the position.")).  Plaintiff did not

1  complain to anyone about this conversation.  (Pl. Dep. 14-15).

2       Plaintiff argues that this speech was on a matter of public

3  concern because it "addressed potential corruption in the hiring

4  process, the existence of a preferred candidate and an official who

5  did not want 'the wrong candidate' hired."  (Pl. Opp'n 5).

6       Plaintiff's statement did not directly allege that Dupey was

7  engaging in unethical hiring practices, but viewing the facts in a

8  light most favorable to plaintiff, it did insinuate plaintiff

9  believed Dupey's request to be improper.  While a complaint about

10 the hiring practices of a public entity may be a matter of public

11 concern, for several reasons plaintiff's statement here was not.

12 First, as to content, plaintiff did not directly charge unethical

13 hiring practices as a routine or even repeated matter but instead

14 suggested that Dupey's attempt to control the process in that one

15 instance was improper.  Second, as to form, plaintiff made her

16 statement to only Dupey and to no one else.  Not only was this an

17 internal and private audience of one, but the statement was also

18 made to the person whose conduct plaintiff found objectionable.

19 Plaintiff made no effort to apprise anyone else of what she

20 believed was Dupey's improper request.  Finally, as to context,

21 there is no evidence that at the time of plaintiff's statement

22 Dupey had been engaging in unethical hiring practices such that

23 plaintiff's statement could be understood as an indictment of

24 ongoing and repeated violations.  The court concludes that as a

25 matter of law plaintiff's fall 2010 statement to Dupey was not on a

26 matter of public concern.

27      Second, plaintiff asserts that she "spoke out against keeping

28 the paper system when the system was fully computerized."  (Pl.

7

1  Opp'n 5).  The record reflects that in July 2011, plaintiff asked

2  Dupey why paper copies of applications were being kept for another

3  year after the application system had become fully computerized.

4  (Pl. Dep. 28-30).  After receiving a response, plaintiff sent an

5  email to defendant Dupey and two other admissions personnel,

6  expressing her concern that keeping paper records was "a waste of

7  time, resources, and money."  (Def. Mot. Ex. 1D (Bates number 127-

8  29)).  About a week later, plaintiff claims that Dupey told her

9  "she didn't like the tone of [her] email and thought it was

10 disrespectful."  (Pl. Dep. 31).  Plaintiff did not complain about

11 Dupey's comment to anyone.  (Pl. Dep. 31).

12     While inefficiency in government can be a matter of public

13 concern, *Johnson v. Multnomah County*, 48 F.3d 420, 425 (9th Cir.

14 1995), "the content of the communication must be of broader

15 societal concern," *Brownfield*, 612 F.3d at 1148.  Indeed, the cases

16 cited by plaintiff finding a matter of public concern involved

17 substantial charges of waste or corruption.  *See, e.g., Eng*, 552

18 F.3d at 1072-73 (statement regarding leaked information that led to

19 increased costs in the construction of a public school complex);

20 *Keyser v. Sacramento City Unified Sch. Dist.*, 265 F.3d 741, 745

21 (9th Cir. 2001) (allegations that charged "administrators with

22 spending federal Title I money to pay for consultants and other

23 personnel in violation of federal guidelines on the use of the

24 money"); *Johnson*, 48 F.3d at 424-25 (allegations included

25 assertions of "potentially criminal behavior"); *Roth v. Veteran's*

26 *Admin. of Gov't of U.S.*, 856 F.2d 1401, 1405-06 (9th Cir. 1988),

27 *overruled on other grounds by Garcetti v. Ceballos*, 547 U.S. 410,

28 417 (2006) (allegations that "VA administrators and staff wasted

8

1  resources, acted unethically, mismanaged personnel, and violated

2  safety regulations, thereby putting patients in jeopardy"). 

3  Plaintiff's statement about the waste of paper and time does not

4  approach the level of public concern in these cases because the use

5  of paper for an additional year during the transition from hard to

6  electronic files is not a matter of broad societal concern.  Not

7  only that, but the form of plaintiff's communication – an internal

8  email to three people – weighs against finding she spoke on a

9  matter of public concern.  Finally, the context of plaintiff's

10  email, which was a disparagement of the current practice, also

11  weighs against finding that it was a matter of public concern. 

12  Accordingly, in light of the context, form, and content of

13  plaintiff's statement, the court concludes as a matter of law that

14  plaintiff's concern about the costs associated with using both

15  paper and electronic files was not a matter of public concern.

16       Third, on February 20, 2012, plaintiff emailed defendant

17  Piasecki complaining that Dupey had created an uncomfortable and

18  passive aggressive work environment.  (Def. Mot. Ex. 1E (Bates No.

19  329)).  In the email, plaintiff wrote:

20       Peggy has attempted to get rid of my position since she
         took over the department. . . . [T]o my detriment is the
21       fact that I refuse to align myself with colleagues
         against others and engage in office politics.  After
22       clearly stating to Peggy that I would not align with her
         against others in the department, she severed our bi-
23       monthly meetings for eight months, only to reinstate them
         a couple of months ago.  This was prompted by my
24       application for a position she had created as a promotion
         for a colleague – in flagrant disregard for NSHE hiring
25       policies.  This position is higher in rank than my
         current position and pays an allocated 15K more per year
26       than I currently make. . . . It is a very uncomfortable
         and passive aggressive environment.  As you said, it is
27       soul crushing.  Not the work, the work environment.

28  *Id.*

9

1      Complaints of an oppressive work environment have been

2   considered matters of public concern when they involve either

3   substantial issues of public concern, such as unlawful conduct or

4   discrimination, or a collective grievance.  *See Alpha Energy*

5   *Savers, Inc. v. Hansen*, 381 F.3d 917, 925 (9th Cir. 2004)

6   (plaintiff spoke on matter of public concern when he testified

7   about race and age discrimination by a governmental employer); *Pool*

8   *v. VanRheen*, 297 F.3d 899 (9th Cir. 2002) (letter detailing "good

9   ole boy" environment which fostered racial and gender

10  discrimination spoke on matter of public concern); *McKinley v. City*

11  *of Eloy*, 705 F.2d 1110 (9th Cir. 1983) (police officer's public

12  criticism of city's decision not to give police officers an annual

13  raise protected by the First Amendment); *see also Ellins*, 710 F.3d

14  at 1057.  Plaintiff's statement in this case involves neither.  In

15  the context of the entire record, her statement was decidedly

16  personal: Plaintiff claimed that Dupey mistreated her because she

17  refused to engage in office politics.  There is no allegation that

18  Dupey's conduct was creating a hostile and oppressive environment

19  for anyone but plaintiff.  Nor are office politics a matter of

20  public concern.  Although plaintiff's complaint that Dupey created

21  a job for a colleague might marginally touch on a matter of public

22  concern, it was still conveyed as a matter of private interest –

23  that is, plaintiff's desire for a promotion.  (*See* Def. Mot. Ex. 1E

24  (Bates No. 329) ("This position is higher in rank than my current

25  position and pays an allocated 15K more per year than I currently

26  make.").  The fact that plaintiff made this statement internally

27  weighs heavily against a finding that she was speaking on a matter

28  of public concern.  Accordingly, the court concludes plaintiff's

10

1  third comment did not speak to a matter of public concern.

2      Finally, plaintiff's complaint asserts that in November 2011,

3  plaintiff applied for a job that had been created for her colleague

4  Kris Nelson.  The complaint asserts that plaintiff's application

5  forced the search to become "legitimate,"[2] and that her filing of

6  the application was protected expressive conduct protesting Dupey's

7  hiring practices.

8      "Non-verbal conduct implicates the First Amendment when it is

9  intended to convey a 'particularized message' and the likelihood is

10 great that the message would be so understood."  *Alpha Energy*

11 *Savers, Inc. v. Hansen*, 381 F.3d 917, 924 (9th Cir. 2004).  There

12 is no evidence that plaintiff intended her applications to convey a

13 particularized message, nor is there evidence suggesting it was

14 highly likely defendants would have understood it as such.  This is

15 particularly so given plaintiff's ongoing attempts to secure higher

16 paid employment with the university.

17     In addition, even if the plaintiff's application could be

18 considered expressive conduct, plaintiff cites to no evidence that

19 suggests that what she was protesting was in fact a violation of

20 the university's hiring policies.  Plaintiff makes no effort to

21 substantiate or explain her assertion that Dupey violated hiring

22 policies, including specifically what those policies were or how

23 Dupey supposedly violated them.  Plaintiff's testimony that it was

24 "common knowledge" that Dupey created a position for Nelson and

25 that Nelson frequently talked about her promotion before it

26

27     [2] Plaintiff's complaint also references applications she filed in June

28 and July 2012 that required searches to become "legitimate."  Plaintiff does not identify either of these applications as protected speech.

1  occurred (Pl. Dep. 42:8-18) is speculative, conclusory, and

2  constitutes inadmissible hearsay.  It also fails to explain how

3  Dupey's actions violate any specific NSHE policies.

4      In any event, plaintiff's expressive conduct relates to what

5  is essentially an individual personnel grievance.  Further, it is

6  unclear to whom she allegedly broadcast her statement beyond

7  defendant Dupey.  Taken together, the limited audience and

8  minimally relevant subject matter of plaintiff's statement compel

9  the conclusion that plaintiff was not speaking on a matter of

10  public concern.[3]

11      Because plaintiff has failed to show that a genuine issue of

12  material fact exists that would establish that plaintiff spoke out

13  on a matter of public concern, the defendant is entitled to summary

14  judgment on plaintiff's First Amendment claim.[4]

15  II. Tortious Discharge and Breach of Contract

16      Having dismissed plaintiff's federal claim, the court declines

17  to exercise supplemental jurisdiction over her state law claims.  A

18  district court need not actuate supplemental jurisdiction if it has

19  dismissed all claims over which it has original jurisdiction.  28

20  U.S.C. § 1367(c)(3); *see Moore v. Kayport Package Express, Inc.*,

21

22      [3] Plaintiff's complaint also states that she "continued to protest to
23  Dupey ongoing searches which were not legitimate."  (Pl. Compl. ¶ 12).
   However, plaintiff points to no evidence as to when or what she protested.
24  The only specific complaint the court can discern is her complaint to
   Piasecki that Dupey had created a job for Nelson.  As already discussed,
25  this did not amount to a matter of public concern.  To the extent
   plaintiff's claim is based on other protests to illegitimate searches,
26  plaintiff has failed to point to a genuine issue of material fact precluding
   summary judgment on such claim.

27
      [4] As plaintiff has not proven her First Amendment violation, any claim
28  of constructive or tortious discharge in violation of "federal public
   policy" must also fail.

1  885 F.2d 531, 537 (9th Cir. 1989).  "[I]n the usual case in which

2  all federal-law claims are eliminated before trial, the balance of

3  factors to be considered under the pendent jurisdiction

4  doctrine—judicial economy, convenience, fairness, and comity—will

5  point toward declining to exercise jurisdiction over the remaining

6  state-law claims."  *Carnegie–Mellon University v. Cohill*, 484 U.S.

7  343, 350 n.7 (1988).  Here, fairness and convenience favor remand

8  as plaintiff's claims originated in state court, and state court

9  was plaintiff's chosen venue.  Comity also favors remand, as

10 plaintiff's tortious discharge claim involves a determination of

11 Nevada public policy and such determinations are preferably made by

12 the state courts.  Economy does not seem to be a significant factor

13 in this case.  Accordingly, the plaintiff's constructive or

14 tortious discharge and breach of contract claims will be remanded

15 to the state court for further proceedings.

16 **Conclusion**

17      In accordance with the foregoing, the defendants' motion for

18 summary judgment is **GRANTED IN PART** and **DENIED IN PART**.  The motion

19 is granted as to plaintiff's First Amendment claim.  The court

20 declines to consider plaintiff's state law claims and hereby

21 remands said claims to the Second Judicial District Court of the

22 State of Nevada in and for the County of Washoe.  The clerk of the

23 court shall enter judgment accordingly.

24      IT IS SO ORDERED.

25      DATED: This 25th day of July, 2013.

26

27      _____
        UNITED STATES DISTRICT JUDGE

28

13